# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

SHAMEKA S.J.,

                                                    Plaintiff,

                v.                                          3:20-CV-560
                                                            (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                                    Defendant.

PETER A. GORTON, ESQ., for Plaintiff
DANIEL TARABELLI, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 7).

## I.   PROCEDURAL HISTORY

On August 29, 2016, plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), each alleging disability beginning September 3, 2010. (Administrative Transcript ("T") 179-189).  Plaintiff's application was denied initially on November 15, 2016. (T. 81-110).  Administrative Law Judge ("ALJ") Elizabeth W. Koennecke granted plaintiff's request for a hearing and heard plaintiff's testimony on August 20, 2018. (T. 50-70).  On January 28, 2019, the ALJ held a supplemental hearing to hear testimony from Vocational Expert ("VE") Marissa

Howell. (T. 72-80).  Plaintiff did not attend this hearing but was represented by legal counsel. (T. 74).  On February 7, 2019, the ALJ issued an order denying plaintiff's claim. (T. 12-35).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on April 13, 2020. (T. 1-6).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment

2

which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   **FACTS**

Plaintiff was thirty-six years old on the date of the administrative hearing. (T. 54). She lived with her six year old son, and had an eighteen year old daughter who was away at college. (T. 58). Plaintiff was a high school graduate who had attended regular education classes. (T. 54, 317, 456). She had most recently been employed as a cashier and food preparer at a fast food restaurant, but left that position in 2010. (T. 60, 220, 317).

Plaintiff had been treated for pain, numbness, and tingling in one or both hands and wrists since at least 2011. (T. 271, 324, 387). She had been diagnosed with a number of impairments of the hands and wrists, including carpal tunnel syndrome, and undergone surgical procedures in 2012, 2015, 2016, and 2018 to alleviate her

symptoms. (T. 64, 346, 389-390, 743).  Plaintiff's August 20, 2018 administrative hearing took place a few months after surgery on her right wrist. (T. 64).  She testified that she felt lingering numbness and pain despite these multiple surgeries, and had difficulty lifting objects greater than ten pounds with her left hand and greater than five pounds with her right. (T. 65-66).

Plaintiff had also been receiving treatment for anxiety and depression since at least 2014. (T. 455).  Her physical impairments and family stress were frequent sources of anxiety. (T. 318, 559, 800).  She testified that when her anxiety was high, she began to feel dizzy and needed to sit down. (T. 68).  She also reported that she had problems managing her anger, and had few friends because she found it difficult to trust others. (T. 320, 799).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 18-28).  Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   **THE ALJ'S DECISION**

After reviewing the procedural history of the plaintiff's application and stating the applicable law, the ALJ found that plaintiff met the insured status requirements through September 30, 2015, and had not engaged in substantial gainful activity ("SGA") since the alleged onset date of September 3, 2010. (T. 17-18).  At step two of the sequential evaluation, the ALJ found that plaintiff had the following severe impairments: bilateral carpal tunnel syndrome and "all mental impairments, as variously characterized."  (T. 18-20).  At step three, the ALJ found that plaintiff did not have an

5

impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment.  (T. 20-23).

At step four, the ALJ found that plaintiff had the RFC to perform less than the full range of sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (T. 23-28).  Specifically, she found that plaintiff had no limitations in her ability to sit, stand, or walk, but was limited to carrying up to ten pounds occasionally and less than ten pounds frequently. (T. 23).  Plaintiff had the ability to understand and follow simple instructions and directions; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; and could handle simple, repetitive work-related stress in that plaintiff could "make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that did not require supervision or management of others." (*Id*.)  The ALJ also found that plaintiff should avoid work requiring more complex interaction or joint effort with others to achieve work goals, and could only tolerate superficial contact with the public.  (*Id*.)

In making the RFC determination, the ALJ stated that she considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Ruling ("SSR") 16-3p. (T. 23).  The ALJ further stated that she considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927. (*Id*.)  The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity,

persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 23-24).

Next, the ALJ found that plaintiff had no past relevant work.  (T. 28)  However, the ALJ evaluated the VE testimony, and found that "considering the [plaintiff']'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." (T. 29). Accordingly, the ALJ determined that plaintiff was not disabled from the alleged onset date through the date of the ALJ's decision. (T. 30).

## V.    ISSUES IN CONTENTION

Plaintiff raises three arguments:

1.    The ALJ erred by failing to include appropriate limitations on plaintiff's use of her hands in the RFC determination. (Plaintiff's Brief ("Pl.'s Br.") at 13-20) (Dkt. No. 11).

2.    The ALJ also erred in her RFC determination by failing to properly evaluate opinion evidence that plaintiff had difficulties maintaining appropriate work pace and keeping regular attendance at work. (Pl.'s Br. at 21-26).

3.    The ALJ further erred by failing to address plaintiff's difficulties interacting with co-workers in her RFC determination. (Pl.'s Br. at 26-27).

Defendant contends that the Commissioner's determination should be affirmed because it was supported by substantial evidence, and any errors were harmless and did not impact the ultimate determination of disability. (Defendant's Brief ("Def.'s Br.") at 4-15) (Dkt. No. 12).  For the reasons stated below, this court agrees with defendant and

will dismiss the complaint.[1]

## DISCUSSION

## VI.   RFC/EVALUATING MEDICAL EVIDENCE

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v.*

---

[1] In reaching this decision, the court also considered the reply brief filed by plaintiff (Dkt. No. 15) and the sur-reply brief filed by defendant. (Dkt. No. 18).

*Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue.  SSR 96-5p, 1996 WL 374183, at *2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings."  The responsibility for determining these issues belongs to the Commissioner.  *See* SSR 96-5p, 1996 WL 374183, at *2.  These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act.  *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner,

the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The

ALJ must clearly state the legal rules that she applies and the weight that she accords

the evidence considered.  *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2

(S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL

3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical

opinion of a claimant's treating physician, . . . the opinion of the treating physician is

not afforded controlling weight where . . . the treating physician issued opinions that

are not consistent with other substantial evidence in the record . . . ."  *Halloran v.

Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d

Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If an ALJ decides not to give

the treating source's records controlling weight, then he or she must explicitly consider

the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment;

(2) the amount of medical evidence supporting the opinion; (3) the consistency of the

opinion with the remaining medical evidence; and (4) whether the physician is a

specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v.

Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)).  "[T]he ALJ must 'give good reasons in [its]

notice of determination or decision for the weight [it gives the] treating source's

[medical] opinion.' " *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d at 32).  Should an

ALJ assign less than controlling weight to a treating physician's opinion and fail to

consider the above-mentioned factors, this is a procedural error. *Id.*  It is impossible to

conclude that the error is harmless unless a "searching review of the record . . . assures

us that the substance of the treating physician rule was not traversed." *Id.*

**B.      Summary of Medical Opinion Evidence**

In this case, the ALJ considered multiple medical opinions related to plaintiff's physical and mental limitations.  Plaintiff has challenged the ALJ's evaluation of these opinions, and the respective weights assigned to each. A summary of the opinion evidence and the ALJ's findings are set out below.

**1.      Orthopedic Surgeons  Dr. Stephen Federowicz and Dr. Daniel Federowicz**

Dating back to at least 2012, plaintiff received treatment for her hand impairments from two orthopedic surgeons in the same practice, Dr. Stephen Federowicz and Dr. Daniel Federowicz. (T. 387, 740-41).  Both physicians provided responses to a medical questionnaire addressing  plaintiff's physical impairments on July 18, 2018. (T. 696-698, 701-703).  These separate responses set forth identical descriptions of plaintiff's limitations, so this court will summarize them together.

Both physicians identified plaintiff's diagnosed impairments as carpal tunnel syndrome in the right hand and right hand pain, and noted that she had undergone a "carpal tunnel release" procedure on her right wrist in May 2018.  (T. 696, 701).  They each opined that plaintiff's condition would cause her pain, and this pain would diminish her concentration and pace in the workplace.  (T. 696, 701).  They estimated that plaintiff would be off task for ten percent or less of the workday due to these symptoms. (T. 696, 701).  The orthopedic surgeons further opined that plaintiff's condition would produce good days and bad days, and that these "bad days" would lead

to two days of missed work per month. (T. 696-97, 701-702).  In their opinion, plaintiff had no limitations with regard to standing or walking, but was limited to occasional lifting of weights up to five pounds, and could not lift heavier weights. (T. 697, 702). They opined that plaintiff had the greatest functional limitations in her right upper extremities, and was limited to using her right hand for fine motor activity and using her right arm and hand for reaching and handling up to one-third of the workday. (T. 698, 703).  She could perform fine motor activity, reaching, and handling with her left arm and hand more than one-third of the workday. (T. 698, 703).  At the close of the questionnaire, both Dr. Stephen Federowicz and Dr. Daniel Federowicz responded that "based on history, your examination, review of medical records of patient and objective, clinical and consistent subjective finding," their opinions represented plaintiff's limitations for the period between May 3, 2018 and July 5, 2018. (T. 698, 703).

The ALJ found the orthopedists' opinions to be of "limited evidentiary value" because they specifically addressed limitations between May 3, 2018 and July 5, 2018, and gave no indication that the limitations described therein were permanent. (T. 28). The ALJ also found no record evidence to support the conclusion that plaintiff was unable to lift five pounds or less for a continuous twelve month period, in light of the documented strength and other improvement in the two months since plaintiff's May 2018 hand surgery. (T. 28, 764-765).  She also concluded that the opinion that plaintiff would be off task or absent from work due to her hand impairments was speculative in light of the documented improvement following the 2018 surgery and plaintiff's history

of improvement after previous surgical procedures. (T. 28, 346, 390, 398, 405-406, 764-65).

### 2.    Physician's Assistant Mindi Donahue

On June 21, 2018, Physician's Assistant ("PA") Mindi Donahue completed a medical questionnaire regarding plaintiff's physical limitations. (T. 631-633).  She identified plaintiff's impairments as carpal tunnel syndrome in the right hand, and right hand pain. (T. 631).  She opined that these conditions did not cause pain or fatigue, but would diminish plaintiff's concentration and work pace. (*Id*.)  She further opined that plaintiff's physical impairments would cause her to be off task for ten percent or less of the workday, and were likely to produce good days and bad days for plaintiff. (*Id*.) She estimated that these bad days would cause plaintiff to miss one day of work  per month. (T. 632).

In PA Donahue's opinion, plaintiff had no limitations with regard to sitting. (*Id*.) She did not respond to the question regarding plaintiff's ability to stand and/or walk. (*Id*.)  She opined that plaintiff could lift more than ten pounds on an occasional basis, or up to one-third of the workday. (*Id*.)  She further opined that plaintiff  had limitations with regard to lifting, reaching, and handling with her right hand and arm, and could do so up to one-third of the workday. (T. 633).  Plaintiff had fewer limitations on the left side, and could perform fine motor activity, reaching, and handling with her left hand and arm more than one-third of the workday. (*Id*.)  At the close of the questionnaire, PA Donahue stated that "[b]ased on history, your examinations, review of medical records of patient and objective, clinical and consistent subjective finding," her answers

13

represented plaintiff's condition for the time period between May 3, 2018 and June 7, 2018. (T. 633).

On July 11, 2018, PA Mindi Donahue completed a second medical questionnaire regarding plaintiff's physical limitations. (T. 706-708).  She again identified plaintiff's impairments as carpal tunnel syndrome in the right hand, and right hand pain. (T. 706). She opined that these conditions caused pain that diminished plaintiff's concentration and work pace. (*Id*.)  She further opined that the pain would cause plaintiff to be off task for ten percent or less during the workday, and was likely to produce good days and bad days for plaintiff. (*Id*.)   She estimated that these bad days would cause plaintiff to miss two work days per month. (T. 707).

PA Donahue's more recent opinion addressed all of plaintiff's exertional limitations, and concluded that plaintiff could sit for eight hours during the workday, and also stand or walk for eight hours during the workday.  (T. 707).  She opined that plaintiff had limitations with regard to lifting, reaching, and handling with her right hand and arm, and could only do so up to one-third of the workday. (T. 708).  PA Donahue's July 2018 opinion indicated a decrease in plaintiff's strength from the previous month, as she limited plaintiff to lifting up to five pounds occasionally. (T. 707).  Overall, plaintiff still had fewer limitations on the left side, and could perform fine motor activity, reaching, and handling with her left hand and arm more than one-third of the workday. (*Id*.)  At the close of the questionnaire, PA Donahue stated that "[b]ased on history, your examinations, review of medical records of patient and objective, clinical and consistent subjective finding," her answers represented

14

plaintiff's condition for the time period between May 3, 2018 and July 5, 2018. (*Id*.)

The ALJ assigned "limited evidentiary value" to PA Donahue's opinions. (T. 28). She noted that both the June 2018 and the July 2018 opinions were limited to a short period of time following plaintiff's right carpal tunnel release, and that PA Donahue provided no explanation for the decline in plaintiff's lifting ability in the one month period between the opinions. (*Id*.)  As with the treating physician opinions, the ALJ found PA Donahue's opinion that plaintiff's physical impairments would cause her to be off task or be absent from work to be unsupported by substantial evidence. (*Id*.)

### 3.    Consultative Examiner Dr. Gilbert Jenouri

Dr. Gilbert Jenouri performed a consultative physical examination of plaintiff on October 14, 2016. (T. 324-27).  Prior to the examination, plaintiff reported a history of carpal tunnel syndrome bilaterally, with bilateral upper extremity tendinitis causing sharp pain in both wrists. (T. 324).  She also reported daily numbness and tingling in her fingers. (*Id*.)

During the examination, plaintiff demonstrated a normal gait and the ability to walk on heels and toes without difficulty. (T. 325).  She required no assistive devices, and did not require any assistance changing for the examination, getting on or off the examination table, or rising from a chair. (*Id*.)  Dr. Jenouri found full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally in the cervical spine, but reduced extension and flexion in the lumbosacral spine. (T. 326).  Plaintiff showed full range of motion in the elbows and hands, but some reduced range of motion in both wrists. (*Id*.)  Her hand and finger dexterity were intact, but Dr. Jenouri rated her grip

strength on the right as 4 out of 5, and between 3 and 4 out of 5 on the left. (T. 327).
Plaintiff was able to use her fingers to zip, button, and tie. (*Id.*)

Based on his examination, Dr. Jenouri opined that plaintiff had a "moderate
restriction" with regard to lifting, carrying, and grasping with her bilateral upper
extremities. (*Id.*)  He also opined that plaintiff should avoid smoke, dust, and other
known respiratory irritants. (*Id.*)

The ALJ found that Dr. Jenouri's opinion had "some evidentiary value" because
it demonstrated the absence of marked physical limitations as of May 2016. (T. 28).
The ALJ noted that Dr. Jenouri's description of "moderate" restrictions for lifting,
carrying, and grasping was consistent with his consultative examination results.  (*Id.*)
However, the ALJ discounted the opinion as a whole because it did not include more
specific functional limitations, and was based on the single examination. (*Id.*)

### 4.    Mental Health Nurse Practitioner Caroline Murphy

Nurse Practitioner ("NP") Caroline Murphy treated plaintiff for anxiety and
depression since at least November 2015. (T. 539).  She completed a Mental Health
Questionnaire related to these impairments on July 27, 2018. (T. 711-712).  She opined
that plaintiff had "medium" limitations with regard to maintaining attention and
concentration and maintaining regular attendance without interruptions from
psychologically based symptoms. (T. 711).  She also opined that plaintiff suffered
marked limitations with regard to performing activities within a schedule and
performing at a consistent pace. (*Id.*)

NP Murphy further opined that plaintiff had marked limitations in her ability to

16

interact appropriately with the general public and "get along" with co-workers. (*Id*.) She found medium limitations in plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors. (*Id*.)  In her opinion, plaintiff also had marked limitation in her ability to respond appropriately to ordinary stressors in a work setting with simple tasks. (*Id*.)  She considered it a possibility that plaintiff's mental health impairments would cause her to be off task during the workday, but offered no specific opinion on this issue or the question of potential absenteeism from work. (T. 712).  NP Murphy also noted that some of plaintiff's medication had a sedative effect. (*Id*.)

The ALJ assigned "some weight" to NP Murphy's opinion, but noted that the opinion was expressly applicable to the period between January 27, 2018 and July 27, 2018[2], and did not suggest that the functional limitations described therein had lasted for a continuous period of twelve months or more. (T. 28, 712).  The ALJ stated that she still incorporated NP Murphy's findings regarding pace into the RFC determination by limiting plaintiff to unskilled work, and restricted plaintiff from working in close proximity to others in order to address plaintiff's limitations with regard to social interaction. (T. 28).

### 5.    Consultative Psychiatrist Dr. Amanda Slowik

Dr. Amanda Slowik performed a consultative psychiatric examination of plaintiff

---

[2]  NP Murphy's opinion, which is dated July 27, 2018, reverses these dates, and  states that it covers the period between July 27, 2018 to January 27, 2018. (T. 712).  However,  her meaning is clear and plaintiff has not demonstrated that this clerical error creates an ambiguity that requires further development of the record.

on October 13, 2016. (T. 317-322).  Prior to the examination, plaintiff reported difficulty falling asleep, loss of appetite, and a chronic low mood. (T. 318).  She reported stress associated with her physical health as well as home and family responsibilities. (*Id*.)  She described her anxiety as present even when she was in a good mood, and reported short-term memory deficits, concentration difficulties, problems with organization and planning, and a low motivation to learn new things. (*Id*.)

During the single examination by Dr. Slowik, plaintiff demonstrated a cooperative demeanor and adequate social skills.  (T. 319).  She appeared restless, and rocked back and forth during the evaluation. (*Id*.)  Plaintiff showed a coherent and goal-directed thought process with no evidence of hallucinations, delusions, or paranoia. (*Id*.)  She had a depressed and anxious affect and was tearful during the evaluation. (*Id*.)  Dr. Slowik described plaintiff's mood as dysthymic and anxious. (*Id*.)  Plaintiff's attention and concentration were intact, and she was able to perform simple calculation and counting exercises. (*Id*.)

Dr. Slowik found plaintiff's recent and remote memory skills to be mildly impaired, "due to [plaintiff's] distractibility secondary to physical pain which she rated as a 4 or 5/10 today, as well as due to her anxiety and depression." (*Id*.)  Plaintiff was able to remember a list of three objects immediately, but only recall two of three after a five minute delay. (T. 545).  She was able to recite a series of seven digits forward, and five digits backward.  (*Id*.)

Based on her examination, Dr. Slowik opined that plaintiff had no limitations in her ability to follow and understand simple directions and instructions and maintain

attention and concentration. (T. 320). She found mild limitations in plaintiff's ability to perform simple tasks independently, learn new tasks, and make appropriate decisions. (*Id*.) She also opined that plaintiff had moderate to marked limitations in maintaining a regular schedule and appropriately dealing with stress. (*Id*.) In Dr. Slowik's opinion, plaintiff was moderately limited in her ability to relate adequately with others and perform complex tasks independently. (*Id*.) She opined that these difficulties were caused by distractability, lack of motivation, depression, and anxiety. (*Id*.) Dr. Slowik gave a "guarded" prognosis, in light of the chronic nature of plaintiff's mood disturbance. (T. 321). She recommended weekly individual psychological therapy services, and a treatment reevaluation to determine if plaintiff's current medication was effectively managing her mood disorder. (*Id*.)

The ALJ assigned "some weight" to Dr. Slowik's opinion because it was consistent with the broader medical record and supported by the consultative examiner's own findings. (T. 27). For example, the ALJ found that Dr. Slowik's assessment of plaintiff's ability to follow and understand simple directions and instructions and maintain attention and concentration were consistent with her examination of plaintiff and plaintiff's activities of daily living. (T. 27, 319-320). The ALJ discounted the portion of Dr. Slowik's opinion regarding plaintiff's ability to maintain a regular schedule and handle stress, because it failed to account for subsequent record evidence that plaintiff's anxiety and other mental health symptoms responded well to medication management and outpatient treatment. (T. 27, 467, 481, 544, 662, 680, 806).

### 6.      State Agency Psychological Consultant Dr. Lieber-Diaz

Dr. K. Lieber-Diaz, a state agency psychological consultant, reviewed plaintiff's then-current medical records and issued a Mental RFC Assessment on October 17, 2016. (T. 91-94).  Based upon that review, Dr. Lieber-Diaz opined that plaintiff had moderate limitations in her ability to understand, remember, and carry out detailed instructions, but had no significant limitations with regard to remembering locations and work-like procedures, and no significant limitation in her ability to understand, remember and carry out very short and simple instructions. (T. 92).  In Lieber-Diaz's opinion, plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods, and in her ability to meet customary workplace tolerances for performing activities within a schedule, maintaining regular attendance, and being punctual. (*Id*.)  Lieber-Diaz found no significant limitations in her ability to sustain an ordinary routine without special supervision, work in coordination with or proximity to others, and make simple work-related decisions. (*Id*.)  Lieber-Diaz further opined that plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id*.)

With regard to social interaction, Dr. Lieber-Diaz opined that plaintiff was moderately limited in her ability to accept instruction and respond appropriately to criticism from supervisors, and in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (T. 93).  She had no

significant limitations with regard to interacting appropriately with the general public, asking simple questions or requesting assistance, or maintaining socially appropriate behavior and basic standards of neatness and cleanliness. (*Id*.)  Dr. Lieber opined that plaintiff had moderate limitations in her ability to respond appropriately to changes in the work setting.  (*Id*.)

As additional explanation for the opinion, Dr. Lieber-Diaz cited treatment notes from February 2016 showing that plaintiff had an intact memory with normal mood and affect, and Dr. Slowik's consultative examination report depicting intact attention and concentration, mild memory impairment, and coherent thought processes. (*Id*.)  Lieber-Diaz also referenced plaintiff's description of her daily activities including cooking, cleaning, laundry, and shopping. (*Id*.)  Based upon the review of the available medical record, Lieber-Diaz opined that plaintiff was capable of simple work on a sustained basis. (*Id*.)

The ALJ found Dr. Lieber-Diaz's opinion that plaintiff could perform "simple work" on a sustained basis to be "of significant evidentiary weight." (T. 27-28).  She based this conclusion on the state agency consultant's "program and professional expertise," the opinion's consistency with the medical record available at the time of the consultant's review, and its ultimate conformity with the fully developed medical record. (T. 27).  The ALJ found Dr, Lieber-Diaz's opinion consistent with plaintiff's mental health treatment records from October 2014 through October 2018, in particular NP Murphy's findings that plaintiff's anxiety symptoms were well-managed when she was compliant with her medication. (T. 27, 662, 680).

## C.    Application

Having set forth the legal standard and the various medical opinions, the court will now explain its basis for concluding that the ALJ's evaluation of those opinions and the other record evidence was supported by substantial evidence, and that any errors in the RFC determination were harmless and did not prejudice plaintiff.

### 1.    The ALJ's Findings Regarding Plaintiff's Ability to Use Her Hands Were Supported by Substantial Evidence.

Plaintiff contends that the ALJ failed to properly assess the medical evidence regarding plaintiff's carpal tunnel syndrome, tendinitis, and other hand impairments, and thus erred by excluding any limitations on plaintiff's use of her hands from the RFC determination. (Pl.'s Br. at 13-20).  This argument is not persuasive.

The ALJ's decision includes a summary of plaintiff's "multiple unrelated severe impairments with regard to her hands and wrists," but concluded that the documented improvement in these conditions precluded any functional limitations from the RFC except for some lifting restrictions. (T. 26).  The ALJ noted that plaintiff had been diagnosed with carpal tunnel syndrome since at least March 2011, but her conditions was considered stable at that time and x-rays were negative. (T. 26, 274, 387).  Plaintiff reported at the time that her carpal tunnel symptoms had not caused her much trouble. (T. 387).

In June 2012, plaintiff sought medical attention after experiencing increased pain and difficulty holding objects without dropping them. *(Id.)*  Dr. Stephen Federowicz diagnosed her with an inflammation of the tendons in her right wrist known as

deQuervain's tensynovitis. (T. 387, 389).  He performed a surgical procedure to release the tendon sheath and allow greater range of motion. (T. 390-391).  In a follow-up evaluation in October 2012, plaintiff demonstrated full strength and range of motion in her right hand, with intact sensation despite some occasional pain. (T. 390).  In November 2012, plaintiff showed "excellent mobility" in the hand, despite some decreased sensation. (T. 391).  Dr. Federowicz expected her condition to continue to improve with physical therapy, and she was advised to return if difficulties arose. (*Id*.)

The ALJ noted that plaintiff did not seek any follow-up attention for her hands until January 2015, when she experienced increased pain in her left hand. (T. 26). Upon examination, Dr. Stephen Federowicz found well-maintained range of motion in the elbows, wrists, and hand, with full flexion and extension in the fingers. (T. 393).  In March 2015, Dr. Federowicz performed a carpal tunnel release surgical procedure on the left hand. (T. 396).  In April 2015, plaintiff reported "full relief" from the numbness and tingling in her left hand, with occasional pain. (T. 346, 398).  Dr. Federowicz advised that she may experience sensitivity in the hand for about three months. (T. 399).

The ALJ recognized a similar recovery pattern following plaintiff's subsequent hand surgeries.  (T. 26-27).  On October 28, 2015, plaintiff underwent a procedure to relieve deQuervain's tensynovitis in her left hand, and was "released for activities" by February 2016. (T. 405-406, 410).  Dr. Stephen Federowicz observed "excellent mobility in the wrist," full flexion and extension in the affected finger, and good sensation in the left hand. (T. 411).  He considered "all of [plaintiff's] symptoms to be

23

under reasonable control." (*Id*.)  In May 2018, plaintiff underwent a carpal tunnel release on her right hand. (T. 27, 652-54).  By September 2018, plaintiff's pain was "low intensity," her range of motion was considered within functional limits, and her strength was considered to be 4 out of 5. (T. 741, 763).

The ALJ evaluated the various medical opinions regarding plaintiff's physical limitations in light of these treatment notes. (T. 28).  Although the ALJ did not expressly reference the treating physician rule, she also clearly recognized the treatment history and orthopedic specialization of Dr. Stephen Federowicz and Dr. Daniel Federowicz. *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013) (citing *Halloran v. Barnhart*, 362 F.3d at 31-32) ("where the ALJ's reasoning and adherence to the regulation is clear," and it is obvious that the "substance of the treating physician rule was not traversed,"  no "slavish recitation of each and every factor" of the treating physician rule is required).  In discounting these treating source opinions, the ALJ emphasized plaintiff's documented improvement following surgical intervention for her various hand impairments, including the May 2018 right carpal tunnel release. (T. 28, 741, 763).  She also recognized the limited scope of the opinions, which by their terms only addressed plaintiff's physical condition for the period between May and July 2018 while plaintiff recovered from surgery on her right hand and wrist. (T. 28, 698, 703).  Although plaintiff contends that this approach is unduly restrictive, it is consistent with the terms of the opinions themselves. *See Baker v. Saul,* No. 18-6411*,* 2020 WL 702517, at *2 (W.D.N.Y. Feb. 12, 2020) (opinions that addressed two month period of temporary functional limitations did not satisfy the 12-month durational requirement for

disability); *Overstreet v. Berryhill*, 335 F. Supp. 3d 500, 503-504 (W.D.N.Y. 2018)
(medical opinion had minimal relevance when it only referred to functional limitations
for a period of six months and there was no record evidence supporting an extended or
permanent limitation).  The ALJ's approach is also consistent with the broader medical
record, which shows that plaintiff displayed significant recovery of the use of her right
hand by September 2018.

Beyond the objective medical evidence, the ALJ was justified in discounting the
Federowicz opinions due to their inconsistency with plaintiff's testimony regarding her
ability to use her hands.  Testifying less than three months following the carpal tunnel
release on her right wrist, plaintiff estimated that she could lift approximately ten
pounds with her left hand, but was limited to five pounds with her right hand "at the
moment."  (T. 66).  She also reported that she felt numbness in both hands for up to five
minutes when she first woke up in the morning, but this did not affect her during the
day. (T. 65).

Although PA Donahue was not an acceptable medical source, the ALJ gave no
indication that she discounted her opinion on this basis.  *See Glena v. Colvin*, No.
1:15-CV-00810 (MAT); 2018 WL 739096, at *3 (W.D.N.Y. Feb. 6, 2018) ("Nurse
practitioners are defined as 'other sources' under the Regulations; they do not constitute
'acceptable medical sources' . . . . Nevertheless, SSR 06-3p recognizes that 'other
source' opinions are important and should be evaluated on key issues such as
impairment severity and functional effects, along with the other relevant evidence in the
file.").  Instead, the ALJ noted the similarity to the treating source opinions and

discounted PA Donahue's opinion on the same grounds - the limited time frame and the inconsistency with plaintiff's treatment notes.  As with the Federowitz opinions, this discounted weight was consistent with the terms of the opinion and the overall record, and thus was supported by substantial evidence.

The ALJ only relied on Dr. Jenouri's consultative opinion to the extent it demonstrated that plaintiff did not suffer from marked physical impairments at the time of the consultative examination. (T. 28).  This partial reliance recognized that the consultative examiner's report was based on a single examination that predated several of plaintiff's hand surgeries and subsequent physical therapy. (T. 28).  Although plaintiff contends that the ALJ improperly failed to incorporate Dr. Jenouri's opinion regarding "moderate" limitations on grasping into the RFC determination, plaintiff did not identify any such difficulties with handling or grasping objects in her hearing testimony.[3] (T. 65-66).  The only functional limitations described by plaintiff were difficulty lifting and temporary numbness in the morning. (*Id*.)  Therefore, the ALJ

---

[3] Grasping falls within the broader functional area of "handling." SSR 85-15,1985 WL 56857, at * 7 (defining handling as seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands).  SSR 85-15 provides that "[s]ignificant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do.").  Plaintiff has not explained how a *moderate* difficulty with handling or grasping is inconsistent with the ability to perform sedentary work.  *See, e.g., Harris v. Comm'r of Soc. Sec*., No. 09-CV-1112 (NAM/VEB), 2011 WL 3652286, at *5 (N.D.N.Y. July 27, 2011) *report and recommendation adopted*, 2011 WL 3652201 (N.D.N.Y. Aug. 17, 2011) (finding "slight to moderate limitations in activities that require lifting, carrying, and reaching . . . consistent with the ALJ's conclusion that Plaintiff could perform light work");  *Vargas v. Astrue,* No. 10 Civ. 6306 (PKC), 2011 WL 2946371, at *12 (S.D.N.Y. July 20, 2011) (finding "moderate limitations for lifting, carrying, handling objects, and climbing stairs" consistent with RFC for full range of light work)*; Rodriguez v. Barnhart*, No. 01-7373, 2002 WL 31307167, at *5 (S.D.N.Y. Oct. 15, 2002) ("The treating and consulting physicians opined that plaintiff was capable of sitting, standing, walking, lifting, carrying, and handling of objects with moderate limitations. . . .These medical opinions were consistent with the ALJ's finding that plaintiff was capable of performing sedentary work.").

evaluation of Dr. Jenouri's opinion was supported by substantial evidence.

Because the ALJ adequately explained her reliance on the medical record and plaintiff's testimony and the justification for the various weights assigned to the medical opinion evidence, she provided substantial evidence for her RFC determination related to plaintiff's use of her hands.

### 2.   The ALJ's Findings With Regard to Work Pace and Regular Attendance Were Supported by Substantial Evidence.

Plaintiff contends that the ALJ's RFC determination failed to account for plaintiff's difficulties in working at an appropriate pace and meeting ordinary attendance requirements. (Pl.'s Br. at 21-26).  However, the ALJ's RFC determination discusses these issues and the lack of objective medical evidence to support these findings.  Therefore, the ALJ's conclusion was supported by substantial evidence.

Plaintiff testified that she felt dizzy and faint when engaging in physical activity around the house, a condition that she felt was connected to her anxiety. (T. 67).  The ALJ found only one such occurrence in the medical record when plaintiff sought emergency care in November 2013, after hyperventilating and feeling faint. (T. 428-438).  The ALJ reviewed the record for physical impairments that were likely to cause dizziness, such as high or low blood pressure, and found none. (T. 26).  The ALJ also found no mental health records that connected such physical symptoms to plaintiff's anxiety. (*Id.*)  In reviewing plaintiff's testimony, the ALJ also considered her reports of sleep disturbance, fatigue, and auditory hallucinations, but found no indication from the

isolated references in the medical record that these symptoms had lasted for the requisite duration, impacted plaintiff's activities, or were a significant treatment focus. (T. 24, 796-799).

The ALJ also considered the medical opinion evidence regarding pace and attendance. For example, plaintiff's treating orthopedic surgeons and PA Donahue opined that plaintiff would be off task for up to ten percent of the workday, and could be expected to miss two days per month of work, due to the pain associated with her carpal tunnel syndrome. VE Howell testified that, based on his experience, a standard employer would tolerate an employee being off task for up to 20% of an eight-hour workday and absences of up to two days per month, as long as that rate of absenteeism did not persist for three months in a row. (T. 78-79). Moreover, as the ALJ previously noted, the medical opinions regarding plaintiff's ability to stay on task and potential absenteeism only covered the period between May 2018 and July 2018, when plaintiff was still recovering from the right carpal tunnel release procedure and participating in physical therapy. (T. 698, 703, 708, 763-792). Furthermore, this opinion is inconsistent with plaintiff's own testimony that her hand impairments primarily affected her ability to lift heavier items, and briefly caused numbness in the morning that went away after five minutes or less. (T. 65).

The ALJ also considered consultative psychiatric examiner Dr. Slowik's opinion that plaintiff's ability to maintain a schedule was "moderately to markedly" limited. (T.

27, 320). Dr. Slowik did not identify the basis for this opinion, but she did note that plaintiff, who was awaiting surgery on her left hand, appeared distracted by the pain. (T. 318). As discussed above, this left hand pain became significantly reduced after several months of successful surgery and physical therapy. (T. 610). To the extent that psychiatric limitations influenced Dr. Slowik's conclusion regarding plaintiff's ability to keep a schedule, the ALJ noted that plaintiff had shown improvement in managing her symptoms when she was consistent with her medication. (T. 27). This is consistent with Dr. Slowik's recommendation that plaintiff would likely benefit from a reevaluation of her psychiatric medication to determine whether it was effectively managing her symptoms. (T. 321).

Finally, the ALJ considered the opinion of one of plaintiff's mental health providers, NP Murphy, that plaintiff had marked limitations in performing activities within a schedule, and medium limitations in maintaining regular attendance. (T. 711). The ALJ noted that this opinion only covered a limited time period between January 27, 2018 and July 27, 2018, and there was no evidence that the condition extended for a longer period of time. (T. 28). Indeed, NP Murphy noted in October 2018 that plaintiff was better managing her medication and had been able to regularly attend her mental health appointments. (T. 806). The record shows that plaintiff's missed appointments were often attributable to transportation issues or scheduling conflicts, rather than plaintiff's symptoms. (T. 512, 514-15). Still, the ALJ incorporated NP Murphy's

concerns about maintaining work pace by limiting plaintiff to unskilled work.  *See Tatelman v. Colvin*, 296 F. Supp. 3d 608, 613 (W.D.N.Y. 2017) (". . . it is well-settled that a limitation to unskilled work, such as the . . . lens inserter positions identified by the VE as suitable for someone with plaintiff's RFC, sufficiently accounts for limitations relating to stress and production pace."); *see also Abar v. Colvin*, No. 7:15-CV-95 (GTS/WBC), 2016 WL 1298135, at *5 n.8 (N.D.N.Y. March 31, 2016) (collecting cases that concluded "when medical evidence demonstrates that a claimant can engage in simple routine tasks or unskilled work despite limitations in concentration, persistence, and pace, limiting a plaintiff to only unskilled work sufficiently accounts for such limitations." ).

The ALJ's conclusion that plaintiff could perform simple, unskilled work was also consistent with the opinion of state agency consultant Dr. Lieber-Diaz, who reviewed plaintiff's medical records in October 2016. (T. 27-28).  In assessing plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability.  *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Miller v. Comm'r of Soc. Sec.*, 13-CV-1388 (GLS), 2015 WL 1383816, at *8 (N.D.N.Y. Mar. 25, 2015) (both consultative examiner

and non-examining physician were recognized experts in evaluation of medical issues in disability claims; [a]ccordingly, their opinions can be given weight, even greater weight than opinions of treating physicians, when, as here, they are supported by substantial evidence).  Such reliance is appropriate where the consultant's opinion is supported by other record evidence.  *See Swan v. Astrue*, No. 09-CV-486-S, 2010 WL 3211049, at *5 (W.D.N.Y. August 11, 2010) ("State agency medical consultants are qualified experts in the evaluation of disability claims and as such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Here, the ALJ noted that Dr. Lieber-Diaz's opinion was consistent with the available medical records in 2016, as well as subsequent records that showed plaintiff's symptoms were well-managed when she was compliant with her medication. (T. 27, 662, 680. 806).  Accordingly, the ALJ had substantial evidence to support his RFC determination regarding plaintiff's ability to maintain a schedule and perform at a consistent pace.

### 3.   The Absence of Greater Limitations on Social Interaction with Co-workers in the RFC Determination was Harmless Error.

As discussed above, the ALJ's RFC determination imposed greater restrictions on plaintiff's interaction with the general public than on her interactions with co-workers or supervisors. (T. 23).  More specifically, the ALJ limited plaintiff to "superficial contact" with the general public, but only excluded her plaintiff from supervisory or management responsibilities, and "complex interaction" or "joint

31

efforts" with co-workers. (*Id*.)  Plaintiff correctly asserts that the ALJ's failure to justify this distinction was error, because the relevant medical opinion evidence did not distinguish between co-workers and the general public.  *See Joseph H. v. Comm'r of Soc. Sec.*, No. 3:19-CV-587 (ATB), 2020 WL 2736276, at *8 (N.D.N.Y. May 26, 2020) (". . . the ALJ compounded her error by failing to explain how she determined that plaintiff could tolerably interact with co-workers and supervisors up to one-third of the workday but not the general public, when the medical opinion evidence in the record made no such distinction regarding plaintiff's limitations in interacting with others.");  *Colosi v. Comm'r of Soc. Sec.*, No. 18-CV-01496 (EAW); 2020 WL 548976, at *4 (W.D.N.Y. Jan. 31, 2020) (remanding where ALJ's RFC determination allowed occasional interaction with co-workers, and only medical opinion evidence in the record found an inability to work in coordination or proximity to others).

Defendant does not challenge plaintiff's assertion that the ALJ erred with regard to social interaction, but has demonstrated that such error was harmless in this case because it did not affect the ultimate determination of disability. (Def. Br. at 14-15).  At step five, the ALJ relied on VE testimony that an individual with plaintiff's RFC could perform the representative jobs of lens inserter, table worker, and dowel inserter.  (T. 29-30, 77).  The Dictionary of Occupational Titles ("DOT") provides that the level of interaction with other people is "not significant" for any of these positions.[4]  DOT, Lens Inserter, 1991 WL 679273; DOT, Table Worker, 1991 WL 680217; DOT, Dowel

---

[4] VE Howell testified that there was no conflict between the DOT and her analysis of the representative occupations. (T. 77).

Inspector, 1991 WL 686074.  These types of positions are "consistent with limitations to occasional, brief, and superficial contact with coworkers and supervisors." *Connor v. Colvin*, No. 1:13-CV-219, 2014 WL 3533466, at *4 (D. Me. July 16, 2014). Therefore, the ALJ's failure to specifically limit plaintiff to minimal or superficial contact with co-workers was harmless error.  *See Williams v. Colvin*, No. 4:14-CV-524 (NKL); 2015 WL 5308064, at *9 (W.D. Mo. September 10, 2015) (finding that plaintiff was not prejudiced by the lack of any express limitation on social functioning in the RFC, where representative jobs had low level of social interaction); *Sweeney v. Colvin*, No. 3:13-CV-2233 (GBC), 2014 WL 4294507, at *17 (M.D. Pa. Aug. 28, 2014) ("A number of other courts have found harmless error where an alleged limitation that was not included in the ALJ's hypothetical (or in the RFC) was not necessary to perform one or more of the jobs identified by the VE, according to the DOT.") (quoting *Rochek v. Colvin*, No. 2:12-CV-1307, 2013 WL 4648340 at *12 (W.D. Pa. Aug. 23, 2013)). Accordingly, the ALJ's error with regard to social interaction does not merit remand. *Johnson v. Comm'r of Soc. Sec.*, 790 F. App'x 325  (2d Cir. 2020) ("Remand is unnecessary where 'application of the correct legal standard could lead to only one conclusion.'") (citations omitted); *Camarata v. Colvin*, No. 14-CV-0578 (MAD/ATB), 2015 WL 4598811, at *16 (N.D.N.Y. July 25, 2015) (denying request for remand because application of the correct legal standard would not change the outcome).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

33

**ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated:        April 29, 2021

Andrew T. Baxter
U.S. Magistrate Judge